# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GEORGE GRAVES,<br><br>   Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>YONAS SISAY, M.D.,<br><br>   Defendants. | Civil Action No.: PWG-18-1709 |

## MEMORANDUM OPINION

Plaintiff George Graves, who is incarcerated in Maryland Correctional Institution Jessup (MCIJ) and proceeding without an attorney, filed a 42 U.S.C. § 1983 complaint in this Court, alleging that Defendants Dr. Yonas Sisay, M.D. and Wexford Health Sources, Inc.[1] negligently injured him when Dr. Sisay used the "wrong size tool" for a surgical procedure. ECF No. 1. Pending is Defendants' Motion to Dismiss or for Summary Judgment, ECF No. 9, which the parties fully briefed, ECF Nos. 9-3, 13, 14. Plaintiff also has filed an unauthorized surreply.[2] ECF No. 15. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

---

[1] The Clerk shall correct the name of this Defendant from Wexford Health Service to Wexford Health Sources, Inc. on the docket.

[2] Unless otherwise ordered, a surreply is not permitted. *See* Loc. R. 105.2(a). Mr. Graves did not seek leave to file a surreply, nor has he alleged he would be unable to contest any matters raised by the opposing party in their reply for the first time. *See Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D.D.C. 2001). Therefore, I have not considered the surreply in deciding the pending motion. In any event, the surreply simply reasserts the allegations and argument in the complaint and opposition and does not provide any evidence in opposition to Defendants' motion.

**Background**

In his verified Complaint, Mr. Graves asserts that he filed a sick call request seeking medical attention for irregularity in skin coloring on his left elbow, right knee, and lower left leg. Compl. 4. Dr. Sisay examined Mr. Graves and determined the skin irregularities required a biopsy. *Id.* According to Mr. Graves, biopsies for inmates at MCIJ are normally done at the Jessup Regional Hospital, but in his case Dr. Sisay "decided to perform the biopsy himself." *Id.* He states that Dr. Sisay did not have the right size tool to perform the biopsy, but he went forward with it anyway using a tool that was one-inch in size. *Id.* Mr. Graves asserts that the biopsy left a deep puncture wound on his left leg and damaged a blood vessel, causing excessive bleeding, which, according to Mr. Graves, Dr. Sisay used a "blowtorch" to try to stop. *Id.* He repeats some of this history in his opposition and also insists that, based on the surgical notes of Dr. Saleem, the doctor who ultimately performed the biopsy, the "proper size should have been 5c (sic) by 4cm lesion." Pl.'s Opp'n 2.

After the unsuccessful biopsy, Dr. Sisay referred Mr. Graves to the Jessup Regional Hospital for a "biopsy extraction." Compl. 4. But, according to Mr. Graves, Dr. Saleem informed him that he could not perform the biopsy due to the damage caused by Dr. Sisay's attempt and that Mr. Graves would have to wait for three weeks to have the procedure performed. *Id.* Mr. Graves states that, because of "Dr. Sisay['s] negligence of performing the biopsy operation without the proper size tool," he has suffered "permanent damage[] to [his] left leg" involving "severe[] pain and swelling." *Id.* As relief, Mr. Graves seeks damages of one million dollars. *Id.*

Defendants attached medical records, ECF No. 9-4, and an Affidavit from Dr. Sisay, ECF No. 9-5, to their dispositive motion. This evidence tells a very different story.

On January 6, 2016, Dr. Sisay performed a "small 2mm punch biopsy" on Mr. Graves at MCIJ. Sisay Aff. ¶¶ 5, 7; Med. Recs. 3-4. A "punch biopsy of the skin is a biopsy . . . performed by using . . . an instrument for cutting and removing a small, tube-shaped piece of skin tissue and some underlying tissue." Sisay Aff. ¶ 7. It "is a minor surgical procedure which is routinely performed by primary care physicians . . . done in any physician's office." *Id.*; *see also id.* at 7, Illus. 2. The biopsy did not result in a capture of an adequate sample of tissue due to the condition of Mr. Graves's skin. *Id.* ¶ 9. The bleeding that the biopsy caused could not be controlled through direct pressure and required electrocautery of the wound. Med. Recs. 3-4; Sisay Aff. ¶ 9. Contrary to Mr. Graves's description of a "blow torch," electrocauterization is a commonly used surgical tool in cases where bleeding needs to be controlled. *See* Sisay Aff. 7, Illus. 3. Dr. Sisay then referred Mr. Graves to a surgeon for a skin biopsy. *Id.* ¶ 10.

Dr. Mohammad Saleem saw Mr. Graves at Jessup Regional Hospital five days later on January 11, 2016, and discussed an excisional biopsy with him and informed him of the risks involved with the procedure. Med. Recs. 5; Sisay Aff. ¶ 11. Mr. Graves declined to have the procedure done at that time and it was scheduled for the following week. Med. Recs. 5; Sisay Aff. ¶ 11. Dr. Saleem performed the biopsy on January 18, 2016, removing a "5cm by 4cm lesion" from Mr. Graves's leg. Sisay Aff. ¶ 12; Med. Recs. 7. The wound was closed by sutures and pain medication was prescribed. Med. Recs. 7; Sisay Aff. ¶ 12.

Dr. Sisay saw Mr. Graves again two days later, and the surgical wound showed no discharge or active bleeding. Med. Recs. 11-12. Mr. Graves complained about pain at the site of the wound so Dr. Sisay changed his prescription for Tylenol #3 to three times daily. *Id*. Mr. Graves later was assessed as having a "slow healing ulcer" complicated by "venous stasis and venous insufficiency, contact dermatitis and post-operative infection." Sisay Aff. ¶ 14.

Dr. Sisay explained:

> The vascularity and bleeding noted during the punch biopsy was related to plaintiff's stasis dermatitis. The lack of intact skin to send to the laboratory for examination was a result of scaly and friable nature of the lichen simplex chronica.[3]
>
> Plaintiff's slowly healing wound that developed following plaintiff's second minor surgery was similar to a venous stasis ulcer. A stasis ulcer is a breakdown of skin caused by fluid build up in the skin from poor vein function (venous insufficiency). Fluid leads from veins in to skin and surrounding tissue when the blood backs up rather than returning to the heart through veins. By their nature, stasis ulcers typically heal very slowly over many months or even years.

Sisay Aff. ¶¶ 18, 19.

### Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material

---

[3] Lichen simplex chronica refers to a thickening of the skin with "variable scaling" caused by "repetitive scratching of the skin." Sisay Aff. ¶ 17.

4

facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-52. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson,* 477 U.S. at 248–49. For example, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## Discussion

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any *rights, privileges or immunities secured by the Constitution and laws*, shall be liable to the party injured . . .

42 U.S.C. § 1983 (emphasis supplied). The statute does not confer an independent cause of action; rather, it "generally supplies a remedy for the vindication of rights secured by federal statutes." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). It "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Id.*

### Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th

5

Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994); *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his [or her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").

<u>Medical Malpractice Claim</u>

A medical malpractice claim, based on allegations of negligence, is not a right or privilege secured by the Constitution or by a federal statute. Rather, it is a personal injury claim governed by State law that does not support an Eighth Amendment claim. *See Estelle v. Gamble*, 429 U.S.

97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (requiring a showing of acts or omissions amounting to deliberate indifference to serious medical needs). Mere negligence or malpractice does not rise to a constitutional level. *Donlan v. Smith*, 662 F.Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, 429 U.S. at 106); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("Deliberate indifference [required for an Eighth Amendment claim] is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result."); *Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) ("[M]istreatment or non-treatment must be capable of characterization as cruel and unusual punishment in order to present a colorable claim….").

## Analysis of Plaintiff's Claim

Plaintiff claims that Dr. Sisay was deliberately indifferent to his serious medical needs when he intentionally used an improperly-sized instrument to perform Mr. Graves's punch biopsy. Mr. Graves states that the punch tool was one-inch in size, Compl. 4, and insists that, based on the surgical notes of Dr. Saleem, the "proper size should have been 5c (sic) by 4cm lesion." Pl.'s Opp'n 2. But, the evidence that Defendants filed is to the contrary: Dr. Sisay used a *2 mm* punch, Med. Recs. 3-4; Sisay Aff. ¶¶ 5, 7, and Dr. Saleem removed a "5cm by 4cm *lesion*" from Mr. Graves's leg, Med. Recs. 7 (emphasis added). There is no evidence that the punch tool was one inch, or that one inch was an improper size, other than Graves's statement. Because Plaintiff's story "is blatantly contradicted by the [medical] record, so that no reasonable jury could believe it," I cannot "adopt [his] version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris,* 550 U.S. 372, 380 (2007).

Mr. Graves's claim that his leg was so badly damaged by Dr. Sisay's procedure that Dr. Saleem could not operate is also contradicted by the record. On January 11, 2016, Dr. Saleem told

8

Mr. Graves that "biopsy is not going to cure his skin conditi[on] . . .that chances of cancer are almost none and biopsy is going to be negative."[4] Med. Recs. 5. Dr. Saleem also explained that the surgery may make the lesions worse, the wound could become infected, and it may not heal at all. *Id*. Moreover, the medical record includes a note that "Inmate will think about surgery and will be scheduled for surgery next week." *Id.* And, despite the thorough nature of Dr. Saleem's consultation report, nothing is mentioned about damage so extensive from a punch biopsy done one week prior that another biopsy could not be performed as Mr. Graves contends. The absence of a factual statement in a business record under circumstances where it would be reasonable to expect it to be included is itself proof that the statement was not made. *See* Fed. R. Evid. 803(7). Again, I cannot adopt Plaintiff's unsubstantiated account of the facts in light of the evidentiary record before me. *See Scott,* 550 U.S. at 380.

Finally, the medical opinion that Dr. Sisay provided attributes the complications that Mr. Graves experienced to the pre-existing condition of his skin, a danger that was explained to Mr. Graves before both procedures were performed. *See* Med. Recs. 2, 5, 7. Mr. Graves does not offer any evidence beyond his own lay opinion to refute Dr. Sisay's medical opinion. Dr. Sisay is therefore entitled to summary judgment in his favor based on the facts established by this record. *See Scott,* 550 U.S. at 380.

As for Wexford Health Source, Inc., it appears to be named as a Defendant solely because it employs Dr. Sisay. There is no allegation that a policy or procedure developed or enforced by the corporation resulted in a constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). A private corporation is not liable

---

[4] Dr. Saleem's prediction that the biopsy would be negative was correct. *See* Med. Recs. 9-10.

under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. App'x 279, 282 (4th Cir. 2009). Wexford is also entitled to summary judgment in its favor.

To the extent Mr. Graves intended to include a pendent state law medical malpractice claim, this Court declines to exercise supplemental jurisdiction over the claim. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)).

## CONCLUSION

By separate Order which follows, summary judgment shall be granted in favor of Defendants and the complaint shall be dismissed.


July 17, 2019 \_\_\_/S/_____
Date  Paul W. Grimm
 United States District Judge